# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————————

No. 13-50587

————————

United States Court of Appeals
Fifth Circuit

**FILED**
June 29, 2016

Lyle W. Cayce
Clerk

TED HOPKINS ROBERTS,

           Petitioner - Appellant

v.

JARVIS ANDERSON, Bexar County Community Supervision and Corrections Department Chief; NANCY ZERMENO, Supervision Officer,

           Respondents - Appellees

_____

Cons. w/ 14-50219

MARY S. ROBERTS,

           Petitioner - Appellant

v.

JARVIS ANDERSON, Chief of the Bexar County Community Supervision Corrections Department; NANCY ZERMENO, Supervision Officer,

           Respondents - Appellees

————————————

Appeals from the United States District Court
for the Western District of Texas
USDC No. 5:11-CV-208
USDC No. 5:11-CV-276

————————————

Before BENAVIDES, DENNIS, and SOUTHWICK, Circuit Judges.

No. 13-50587
c/w No. 14-50219

PER CURIAM:*

In these consolidated appeals from the district court's denial of habeas relief, appellants Ted and Mary Roberts, Texas lawyers, formerly married and representing themselves *pro se*, argue that their convictions for "theft by coercion" under Texas Penal Code § 31.03 should be set aside, because the statute is unconstitutionally overbroad and vague—both facially and as applied to their underlying conduct. As explained below, on review of each appellant's respective argument and in light of the highly deferential standard of review mandated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we conclude that the state court's rejection of the Robertses' claims was not a "decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, we AFFIRM the judgments of the district court denying the Robertses federal habeas relief.

## I.

### A.

The background facts are set forth more fully in the underlying decisions in this case,[1] but we briefly sketch them here for convenience. In 2001, Ted and Mary Roberts, who were lawyers practicing in Texas, were having severe marital difficulties. After discovering that Ted had been unfaithful to her, Mary created an online profile on two adult websites, which conveyed that she was a professional woman without enough sex in her life. She purportedly

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] *See Mary Roberts v. Anderson*, No. SA-11-CA-1124-OG (W.D. Tex. Feb. 12, 2014); *Ted Roberts v. Anderson*, Nos. SA-11-CA-208-XR, SA-11-CA-276-XR, 2013 WL 2404110 (W.D. Tex. May 30, 2013); *Mary Roberts v. State*, 319 S.W.3d 37 (Tex. App. – San Antonio 2010, pet. denied); *Ted Roberts v. State*, 278 S.W.3d 778 (Tex. App. – San Antonio 2008, pet. denied).

No. 13-50587
c/w No. 14-50219

created this website in order to catch Ted responding to such ads. Instead, other men responded to Mary's profile. Over several weeks between August and October 2001, Mary met with and had sexual relations with Paul F., Reagan S., Geoffrey F., and Steve R.

Ultimately, Ted discovered Mary's affairs. In October 2001, Ted told his receptionist Christi Trevino that he intended to meet with all Mary's paramours and present them with documents requesting money. Thereafter, Ted began to draft petitions pursuant to Texas Rule of Civil Procedure 202 ("Rule 202 Petitions")[2] that sought court permission to conduct depositions of the paramours in order to investigate whether Ted had any legal claims against them in connection with Mary's affairs. Eventually, Mary began to assist Ted in drafting the petitions. Although the Rule 202 Petitions contain some differences, they all alleged an intention to investigate Mary's adultery with the paramours as a possible ground for divorce; to determine whether violations of the Texas Penal Code constituted negligence per se; and to determine whether the paramours' use of the equipment, facilities, and/or funds of the paramours' companies created a cause of action under the doctrine of *respondeat superior*, law of agency, or law of negligent supervision.

In accordance with written settlement agreements, the four men eventually paid money in order to preclude the filing of the Rule 202 petitions. Some of the money was paid to a charitable foundation created by Ted and Mary purportedly for the benefit of disadvantaged children, but an investigator for the State eventually discovered that Ted and Mary acquired the money for personal use.

---

[2] Rule 202 provides that "[a] person may petition the court for an order authorizing the taking of a deposition on oral examination or written questions . . . to investigate a potential claim or suit."

3

Geoffrey F. was given the choice of either contributing $30,000 to the foundation or paying some interest on Ted and Mary's house payments. He contributed to the foundation. Paul F. paid a total of $15,000. The money supposedly paid for a private investigator Ted hired to investigate Mary and for two lawyers who purportedly took on some of Ted's workload because he was too upset to work. Steve R. paid $30,000 to Ted for alleged expenses caused by his affair, and he paid another $70,000 to the foundation. Steve R. testified that he would not have paid the foundation if he had known Ted and Mary would acquire the money for personal use. Reagan S. paid $10,000 to the foundation. He stated that he knew that he was just being "shaken down" by the Robertses for "hush money."

**B.**

The Texas crime formerly known as "extortion" was consolidated into the comprehensive crime of "theft" in 1973. *See* TEX. PENAL CODE § 31.02. That statute, Texas Penal Code § 31.03, provides that a person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." As relevant here, an appropriation of property is "unlawful" when "it is without the owner's effective consent." § 31.03(b)(1). "Consent is not effective if [it is] induced by deception or coercion." TEXAS PENAL CODE § 31.01(3)(A).

The State charged Ted with five counts of theft by deception and coercion. Count I alleged a common scheme of theft in the aggregate amount of $100,000 or more. Count II alleged theft from Steve R. in the amount of $100,000 or more. However, the court instructed the jury that on Count II it could also find Roberts guilty of theft from Steve R. in an amount less than $100,000. Count III charged theft from Geoffrey F. in the amount of $20,000 or more, but less than $100,000. Count IV charged theft from Paul F. in the amount of $1,500 or more, but less than $20,000, and Count V charged theft

No. 13-50587
c/w No. 14-50219

from Reagan S. in the amount of $1,500 or more, but less than $20,000. Mary's indictment was the same as Ted's in all material respects.

Each indictment used the following or substantially similar language to charge the defendants with theft by appropriating property

> without the effective consent of the said owner, by Deception, namely: by creating and confirming by words and conduct a false impression of law and fact that is likely to affect the judgment of another in the transaction, and that the defendant does not believe to be true, and by failing to correct a false impression of law and fact that is likely to affect the judgment of another in the transaction, that the defendant previously created and confirmed by words and conduct, and that the defendant does not now believe to be true, and by Coercion, namely: by threatening to accuse a person of any offense, by threatening to expose a person to hatred, contempt, and ridicule, and by threatening to harm the credit and business repute of any person

A jury found Ted guilty as charged on Count I, the aggregate count, and Count III, the count based on Geoffrey F.'s contribution to the foundation. The jury acquitted Ted on Count IV, which concerned only Paul F.'s payment of alleged expenses, and on Count V, which concerned the "hush money" payment Reagan S. made to the foundation. On Count II, which concerned Steve R.'s $30,000 payment for alleged expenses and his $70,000 contribution to the foundation, the jury convicted Ted of theft of less than Steve R.'s total payment of $100,000. The court sentenced Ted to five years in prison. The sentence was suspended in 2010, and Ted was released on probation. As for Mary, a separate jury convicted her on all five counts of theft by coercion or deception. Three of her counts of conviction were counts on which Ted was acquitted or found guilty of theft of a lesser amount than charged. Mary was sentenced to 10 years in prison, but the sentence was suspended, and she was released to community supervision.

No. 13-50587
c/w No. 14-50219

**C.**

The Robertses separately appealed their convictions in the Texas courts. Among other contentions not relevant here, the Robertses argued that their convictions must be set aside because the Texas theft statute, to the extent it criminalizes "theft by coercion," is unconstitutionally overbroad and vague—both facially and as applied to their underlying conduct. In thorough opinions, the Texas Court of Appeals rejected the Robertses' contention. *Mary Roberts v. State*, 319 S.W.3d 37 (Tex. App. – San Antonio 2010, pet. denied); *Ted Roberts v. State*, 278 S.W.3d 778 (Tex. App. – San Antonio 2008, pet. denied). As for the Robertses' overbreadth claim, the court concluded that the underlying conduct "is in many ways similar to bribery or extortion," which "are not protected by the First Amendment." *Ted*, 278 S.W.3d at 790. Accordingly, because the overbreadth doctrine applies only where a statute impinges upon speech or conduct protected by the First Amendment, the court concluded that the statute was not overbroad. The Texas court likewise rejected the Robertses' vagueness challenge to the theft-by-coercion statute. In so holding, the court emphasized that the statute defines coercion as "threats that expose a person to hatred, contempt or ridicule or that harm the credit or business repute of any person." *Ted*, 278 S.W.3d at 791 (quoting Tex. Pen. Code. Ann. § 1.07(a)(9)(D), (E)). According to the court, "[r]ead in context, the statute is not so indefinite that people of common understanding would be required to guess at its understanding or that would lead to arbitrary and erratic arrest and convictions. To require further definition of the term 'coerce' would reach the point of defining definitions." *Id.*

Thereafter, Ted filed a § 2254 petition in the United States District Court for the Western District of Texas, in which he contended, *inter alia*, that the Texas theft-by-coercion statute is unconstitutionally vague or overbroad,

No. 13-50587
c/w No. 14-50219

facially and as applied, because it criminalizes lawful speech. Mary separately filed in the same court a § 2254 petition in which she made essentially the same contentions. In separate opinions, the United States District Court rejected the Robertses' constitutional challenges to their convictions for similar reasons as those assigned by the Texas Court of Appeals and accordingly denied habeas relief. *See Mary Roberts v. Anderson*, No. SA-11-CA-1124-OG (W.D. Tex. Feb. 12, 2014); *Ted Roberts v. Anderson*, Nos. SA-11-CA-208-XR, SA-11-CA-276-XR, 2013 WL 2404110 (W.D. Tex. May 30, 2013). The Robertses then separately appealed to this court and their cases were ultimately consolidated for our review. This court granted a certificate of appealability (COA) on whether the district court erred in rejecting their overbreadth and vagueness challenges to Texas's theft-by-coercion statute.

## II.

In an appeal such as this one arising under § 2254, our review of a state court decision rejecting a petitioner's claims on the merits is heavily circumscribed by the deferential scheme mandated by AEDPA. Under AEDPA, we may not grant habeas relief unless the state court's adjudication of the petitioner's claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In the present case, the Robertses rely upon § 2254(d)(1) in contending that the underlying state court decision should be set aside in favor of habeas relief. Under Section 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410. "[T]he state court's decision must have been more than incorrect or erroneous." *Wiggins v.*

7

*Smith*, 539 U.S. 510, 520 (2003).  Rather, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 102.

Applying AEDPA's mandatory deferential scheme to the instant case, we conclude that the underlying state court decisions were neither "contrary to" nor involved an "unreasonable application" of Supreme Court precedent as those terms are narrowly defined by AEDPA.  *See* 28 U.S.C. § 2254(d)(1).  Even assuming *arguendo* that the Robertses have presented a colorable argument regarding the statute's unconstitutionality, for the reasons explained above, we may not grant habeas relief under § 2254(d)(1) unless the Robertses have shown "that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law *beyond any possibility for fairminded disagreement.*"  *Harrington*, 562 U.S. at 103 (emphasis added).  The Roberts have failed to satisfy this heavy burden.  Accordingly, we AFFIRM the district court's denial of habeas relief in these cases.